UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ASHER HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00079-JPH-MG |
| | ) | |
| DENNIS MEYER, | ) | |
| RUTHIE JIMERSON, | ) | |
| KIM HOBSON, | ) | |
| RICHARD BROWN, | ) | |
| MICHAEL SMITH, | ) | |
| NIKKI TAFOYA, | ) | |
| IDOC Commissioner ROBERT E. | ) | |
| CARTER, JR., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF FINAL JUDGMENT**

Asher Hill, an Indiana inmate, brought this action under 42 U.S.C. § 1983

alleging that 1) Defendants Dennis Meyer, Kim Hobson, Richard Brown, Michael

Smith, and Nikki Tafoya violated his Eighth Amendment rights by delaying or

denying necessary dental treatment, and 2) Commissioner Robert E. Carter, Jr.

created policies that violated his Eighth Amendment rights.  The parties have

filed cross-motions for summary judgment. Dkts. 93, 97, 102.  For the reasons

explained in this Order, Defendants' motions for summary judgment are

**granted.**

# I.
# Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

The parties have filed cross-motions for summary judgment. For each motion, the Court views and recites the evidence and draws all reasonable inferences "in favor of the non-moving party." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

# II.
# Facts and Background

## A. The Parties

At all times relevant to the complaint, Mr. Hill was housed at the Wabash Valley Correctional Facility (Wabash Valley).

Dennis Meyer, D.D.S., is a dentist employed at Wabash Valley. Dkt. 95-4, ¶ 2 (Dr. Meyer Affidavit). He is not responsible for scheduling appointments with offenders and he does not directly receive Health Care Request forms upon their submission. *Id.*, ¶ 16. The medical administrative staff first review the Health Care Requests and facilitate responses and schedule appointments as needed. *Id.*

Kimberly Hobson is a registered nurse and at all relevant times was employed at Wabash Valley as the Health Services Administrator. Dkt. 95-1, ¶ 2 (Hobson Affidavit). Her duties are primarily administrative. She reviews inquiries submitted by staff or inmates regarding medical care, ensures compliance with Indiana Department of Correction (IDOC) directives, oversees the nursing staff, and responds to grievances that relate to medical issues. *Id.*, ¶ 3.

Warden Richard Brown, Michael Smith, and Nikki Tafoya are employed by the IDOC who responded to various grievances filed by Mr. Hill.

Commissioner Robert E. Carter, Jr. is the Commissioner of the IDOC.

### B.    Applicable IDOC Policies

The IDOC's Dental Services policy provides for instruction and assistance in oral hygiene, treatment of dental emergencies, routine restoration services, extraction and other surgical services, and provision of prosthetics. Dkt. 99-3 at II.B. (Dental Services Policy). The Dental Services Policy also states that "[w]hen the primary purpose for a dental intervention is cosmetic, it is not provided." *Id.*

IDOC's Health Services Policy 01-02-101 provides that "[m]atters

involving clinical judgment shall be reserved to clinical personnel...." Dkt. 99-4 at 1.

### C.    Mr. Hill's Dental Issues

### 1.    Tooth #16

In March 2018, Mr. Hill submitted two Health Care Request forms complaining about a filling coming out and having a toothache. Dkt. 103-1 at 26. The response to both requests was that Mr. Hill would be scheduled when a dentist became available. *Id.*

Dr. Meyer treated Mr. Hill for the first time on April 5, 2018, his first day treating patients at Wabash Valley. Dkt. 95-4, ¶ 2. Mr. Hill complained about having had pain in tooth #16 for several months. *Id.* Dr. Meyer x-rayed the tooth and determined that it was unopposed, super-erupted, and had moderate periodontitis. *Id.*, ¶ 6. Because Mr. Hill wanted to save the tooth, he performed an Amalgam Restoration, which would resolve some of the symptoms but not all due to the periodontitis. *Id.*

At this same appointment, Mr. Hill complained of more pain in tooth #28 than in tooth #16. Dkt. 99-1 at 29:21-25 (Hill Deposition). Dr. Meyer told him that because he was only scheduled to treat tooth #16, Mr. Hill would need to submit another Health Care Request form within eight weeks for tooth #28. *Id.* at 30:15-25.

### 2.    Tooth #28

Less than a week later, Mr. Hill submitted a formal grievance complaining that the pain in his lower tooth (#28) was causing a lot of pain. Dkt. 95-3 at 4.

4

After reviewing the dental records, Ms. Hobson responded to the grievance by reiterating Dr. Meyer's instruction to submit another Health Care Request form in six to eight weeks. Dkt. 95-3 at 6; dkt. 95-1, ¶ 7; dkt. 99-5 at 105. Mr. Hill appealed and Warden Brown responded by stating that Mr. Hill's medical care had been appropriate in accordance with policy. Dkt. 99-1 at 56:16-25.

On May 29, 2018, Mr. Hill submitted a Health Care Request form complaining that he had lost a filling and was experiencing pain, swelling, and a discharge of pus and blood. Dkt. 103-1 at 26-27. Dr. Meyer was scheduled to see Mr. Hill on June 5, but the correctional officers could not bring him, so his appointment was rescheduled for June 12. *Id.* at 27.

When Dr. Meyer examined tooth #28 on June 12, he did not detect any infection but found a cavity that was too large to fill. Dkt. 95-4, ¶ 8. With Mr. Hill's consent, Dr. Meyer extracted the tooth. *Id.* Dr. Meyer prescribed Ibuprofen 600 mg for 30 days to take as needed for pain. *Id.*

The next day, Mr. Hill submitted an informal grievance complaining that Dr. Meyer had told him that IDOC policy prevented him from performing a root canal on tooth #28 because it was too time consuming and too expensive. Dkt. 95-3 at 2. Ms. Hobson reviewed the dental records and responded that Dr. Meyer had documented that tooth #28 had a class 5 cavity, was not amenable to restoration, and required extraction. Dkt. 95-3 at 2; dkt. 95-1, ¶ 9.

On June 19, Mr. Hill submitted a Health Care Request form complaining about severe pain and asking for stronger pain medication and an antibiotic. Dkt. 103-1 at 27-28. The response was that nothing stronger than Ibuprofen

would be given unless a dentist prescribed it, but the matter was referred for scheduling to see the dentist. *Id.* at 28.

Two days later, the prison was on lockdown, so Dr. Meyer went to Mr. Hill's cell to examine the area where tooth #28 had been extracted. Dkt. 95-4, ¶ 9. Dr. Meyer did not observe any redness or drainage at the extraction site, but he prescribed Amoxicillin for a possible post-operation infection. *Id.* Mr. Hill continued to have the prescription for Ibuprofen 600 mg for pain. *Id.*

### 3.   Tooth #8

On September 19, 2018, Mr. Hill submitted a Health Care Request form stating that he broke his tooth #8 when he bit into an apple and was experiencing pain. Dkt. 95-4, ¶ 10. Dr. Meyer assessed the tooth the same day and found that the crown on the tooth had broken off. *Id.* Dr. Meyer told Mr. Hill that he would be scheduled to have the resin filling replaced. *Id.* The next day, Mr. Hill submitted another Health Care Request form complaining of pain from tooth #8. Dkt. 103-1 at 29. On September 25, 2018, Dr. Meyer took an x-ray of the tooth, removed decay, and restored the resin. *Id.*; dkt. 95-4, ¶ 11.

### 4.   Tooth #14

On October 1, 2018, Mr. Hill complained of severe pain at tooth #16—the one that had been treated in April 2018—plus sore and swollen gums. Dkt. 103-1 at 29. The complaint was forwarded for scheduling. *Id.* Mr. Hill submitted two additional Health Care Request forms and grievances, asking to be seen due to pain and swollen gums. *Id.*; dkt. 95-3 at 10; dkt. 95-1 at ¶ 11. Ms. Hobson

6

responded to the grievances by stating that Mr. Hill had already been "seen by the dentist for this issue." Dkt. 95-1, ¶ 11; dkt. 95-3 at 11.

Dr. Meyer treated Mr. Hill on November 13, 2018. Dkt. 103-1 at 29-30. An x-ray revealed no issues with tooth #16 but showed a deep bony impaction that caused complete bone loss, rendering tooth #14 nonrestorable.  Dkt. 103-1 at 30; dkt. 95-4, ¶ 12. Before extracting the tooth, Dr. Meyer wanted Mr. Hill to take an antibiotic for ten days. *Id.* The resin that had been applied to tooth #8 had also fallen out, so Dr. Meyer completed a second resin restoration on that tooth on November 13. *Id.*

After Mr. Hill had taken the antibiotic, Dr. Meyer extracted tooth #14 on November 27, without issue. Dkt. 95-4, ¶ 13. He prescribed Ibuprofen 600 mg for 15 days for pain, as needed. *Id.*

### 5.   **Additional Complaints**

In November of 2018, Mr. Hill submitted a formal grievance asking for a post and crown or a partial dental plate to replace the resin on tooth #8. Dkt. 95-1, ¶ 12; dkt. 95-3 at 7. Dr. Meyer responded by informing him that IDOC policy did not allow a post and crown and that he lacked control over the policy. Dkt. 95-1, ¶ 13; dkt. 95-3 at 8; dkt. 99-5 at 47. The grievance specialist asked Ms. Hobson if she could provide any further response. Dkt. 95-1, ¶ 13. Ms. Hobson reviewed the grievance, Dr. Meyer's response, and Mr. Hill's medical records and determined that Dr. Meyer's response was appropriate. Dkt. 95-1, ¶ 14; dkt. 95-3 at 9. Ms. Tafoya denied Mr. Hill's grievance appeal, concluding

that the care of tooth #8 was appropriate and that the tooth was still functional. Dkt. 99-5 at 47.

In December 2018, Mr. Hill complained about the color and length of tooth #8. Dkt. 95-4, ¶ 14. Dr. Meyer advised him that after the first resin restoration had failed, he had identified the best shade to match during the second restoration. *Id.* No treatment was indicated because Mr. Hill's complaints regarding the shade of the tooth were considered cosmetic issues, not clinical dental problems. *Id.*

In April 2019, Mr. Hill complained that when tooth #14 was extracted, the roots of the tooth remained. Dkt. 95-4, ¶ 15. Dr. Meyer examined the area, took an x-ray, and determined that there were no root tips left behind. *Id.* Dr. Meyer told Mr. Hill that sensitivity in that area was normal, but no further treatment was clinically indicated. *Id.* Ms. Hobson and Ms. Tafoya responded to Mr. Hill's grievances, stating that his records had been reviewed and his care was appropriate. Dkt. 99-5 at 29, 34-46.

### III.
### Analysis

Mr. Hill argues that the Defendants were deliberately indifferent to his serious dental needs. At all relevant times, Mr. Hill was a convicted offender, so the Eighth Amendment applies to his deliberate indifference claims. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017).

The Eighth Amendment "standard encompasses both an objective and subjective element: (1) the harm that befell the prisoner must be objectively,

sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants [must be] deliberately indifferent to the substantial risk to the prisoner's health and safety." *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021) (internal quotation omitted); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019).

"A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Eagan*, 987 F.3d at 695 (internal quotation omitted). The subjective standard "requires more than negligence and approaches intentional wrongdoing." *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020) (internal quotation omitted). Even a showing of medical malpractice is not sufficient. *Id.* "Rather, the evidence must show that the prison official . . . knew or was aware of—but then disregarded—a substantial risk of harm to an inmate's health." *Id.*

The Defendants argue that they are entitled to summary judgment because even assuming that Mr. Hill suffered from objectively serious medical conditions, there is no evidence that the Defendants were deliberately indifferent to those conditions.

### A.    Claims Against Dr. Meyer

#### 1.    Alleged Delays in Treatment

Mr. Hill's claim that Dr. Meyer delayed the treatment of tooth #16 is not supported by the record. Even though Mr. Hill may have complained months

earlier about that tooth, Dr. Meyer treated the tooth the first day he saw patients at Wabash Valley. No reasonable jury could find that Dr. Meyer delayed any treatment of tooth #16.

On April 5, 2018, Mr. Hill also complained that tooth #28 was causing more pain than tooth #16, the tooth that Dr. Meyer was scheduled to treat. When considering whether a delay in treatment reflects deliberate indifference, a Court asks "how serious the condition in question was, how easy it would have been to treat it, and whether it exacerbated an injury or unnecessarily prolonged pain." *Thomas v. Martija*, 991 F.3d 763, 769 (7th Cir. 2021).

Dr. Meyer testified in his affidavit that "[t]here were no emergent conditions identified at the conclusion of the [April 5] appointment." Dkt. 95-4, ¶ 6. While Mr. Hill told Dr. Meyer that the pain in tooth #28 was greater than the pain in tooth #16, a reasonable jury could not conclude from this information that Dr. Meyer knew the pain from tooth #28 demanded immediate care. The jury therefore could not find that Dr. Meyer's instruction to submit another Health Care Request form within eight weeks was an act of deliberate indifference.

When Mr. Hill submitted a grievance complaining about pain in tooth #28, he was told to submit another Health Care Request form, which he did on May 29. An appointment was set for June 5, but correctional officers were unable to transport Mr. Hill, so the appointment had to be rescheduled to the following week. Dr. Meyer did not cancel that appointment. A "plaintiff must show that the defendant's actions or inaction caused the delay in his treatment." *Walker*, 940

F.3d at 964. No reasonable jury could conclude that Dr. Meyer delayed the June 5 appointment involving tooth #28.

In September, Dr. Meyer saw Mr. Hill the same day he complained that he thought he broke tooth #8. Dr. Meyer determined that the crown on the tooth had broken off, and six days later he took an x-ray and treated the tooth. There is no evidence of any delay in treating tooth #8.

A couple of weeks later, Mr. Hill complained about pain related to tooth #16, but when Dr. Meyer saw him on November 13, 2018, there were no clinical issues with that tooth. Dr. Meyer, however, took an x-ray which revealed bone loss relating to a different tooth, #14. That day, Dr. Meyer repaired the resin on tooth #8 because it had fallen out. After Mr. Hill completed a ten-day course of antibiotics, Dr. Meyer extracted tooth #14 and prescribed pain medication to be taken as needed. Based on this record, no reasonable jury could find that there was an unacceptable delay in treating these teeth.

### 2.   Alleged Denial of Proper Treatment

Mr. Hill points to no evidence that Dr. Meyer's other treatment decisions were deliberately indifferent to his serious dental needs.

Mr. Hill wanted a post and crown or partial dental plate on tooth #28. Instead, Dr. Meyer replaced the resin filling. "[A]n inmate is not entitled to demand specific care and is not entitled to the best care possible . . . ." *Arnett v. Webster,* 658 F.3d 742, 754 (7th Cir. 2011). Rather, inmates are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id.* Dr. Meyer was not required to provide specific treatment based solely on Mr. Hill's requests.

11

Mr. Hill has presented no evidence that a crown or partial plate was necessary to avoid a substantial risk of serious harm—let alone that Dr. Meyer knew such treatment was necessary. *See Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016) ("[A] plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm.").

With respect to tooth #8, Dr. Meyer complied with IDOC policy by not providing treatment because the shade of the tooth was viewed as a cosmetic issue rather than clinical. In addition, dissatisfaction with the *color* of resin used to restore a tooth does not rise to the level of an objectively serious medical condition. *See Wheeler v. Talbot*, 695 F. App'x 151, 154 (7th Cir. 2017) ("Because those exams reasonably suggested to [Dr.] Talbot that the keloids were cosmetic problems only, [plaintiff] could not persuade a rational jury that surgery was medically advisable, let alone that a serious condition had been ignored.").

Finally, when Mr. Hill complained that the root of tooth #14 was left in his jaw after it had been extracted, Dr. Meyer took an x-ray and concluded that no root had been left behind and no treatment was required. No designated evidence contradicts this determination.

The record shows that Dr. Meyer exercised his professional judgment by responding with treatment he deemed appropriate for the symptoms presented by Mr. Hill. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 660 (7th Cir. 2021) (To show deliberate indifference, a [p]laintiff must show a failure to exercise medical judgment at all.").

"[A] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Davis v. Kayira,* 938 F.3d 910, 915 (7th Cir. 2019) (internal quotation omitted). Mr. Hill has failed to demonstrate that no competent dentist would make Dr. Meyer's treatment decisions and recommendations. Dr. Meyer is entitled to summary judgment on these claims.

### 3. Totality of Care

Ultimately, it is "the totality of an inmate's medical care" that matters for a claim of deliberate indifference. *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc); *Kaszuba v. Ghosh*, 580 F. App'x 486, 488 (7th Cir. 2014) ("[I]solated incidents of delay [do] not rise to the level of deliberate indifference."). Dr. Meyer attended to Mr. Hill's complaints, provided pain medication, and visited Mr. Hill in his cell to provide follow-up treatment. Even if Dr. Meyer could have made better treatment decisions or provided faster care in some particular instance, no reasonable jury could find that his overall care showed deliberate indifference to Mr. Hill's serious medical needs.

### B. Claim Against Ms. Hobson

Mr. Hill alleges that Ms. Hobson was deliberately indifferent to his serious dental needs when she failed to "direct Dr. Meyer to provide [him] with proper dental care." Dkt. 99-1 at 21:3-21. He contends that she had the authority to do so. *Id.* He also believes that Ms. Hobson knew that Dr. Meyer cancelled his June 5 appointment and she did nothing to correct that. *Id.*

Mr. Hill does not designate evidence in support of these beliefs; they are nothing but speculation. A party opposing summary judgment must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). Inferences supported only by speculation or conjecture will not suffice. *Skiba v. Ill. Cent. R. R. Co.*, 884 F.3d 708, 721–22 (7th Cir. 2018).

Ms. Hobson, as Health Services Administrator, did *not* have the authority to order specific medical care, formulate treatment plans, or override providers' medical judgment. She had no authority to direct Dr. Meyer's treatment of Mr. Hill.

Moreover, prison officials may generally rely on the judgment of medical personnel unless they have "reason to know that their medical staff were failing to treat or inadequately treating an inmate." *Eagan*, 987 F.3d at 694 (internal quotation omitted).

Ms. Hobson reviewed Mr. Hill's medical records and Dr. Meyer's notes before responding to Mr. Hill's grievances. Mr. Hill has designated no evidence showing that Ms. Hobson had any reason to question the basis of Dr. Meyer's treatment decisions. With respect to the April 5 appointment, the medical records do not reflect that any complaints were made related to tooth #28. Dkt. 103-1 at 26. Thus, Ms. Hobson cannot be found deliberately indifferent for any delay in treating that tooth.

Mr. Hill is also mistaken in his belief that Ms. Hobson knew that Dr. Meyer cancelled the June 5 appointment. In fact, Dr. Meyer did not cancel that appointment.

Based on the designated evidence, no reasonable jury could find that Ms. Hobson was deliberately indifferent to Mr. Hill's serious dental needs.

### C.   Claims Against Warden Brown, Mr. Smith, and Ms. Tafoya

Mr. Hill sued Warden Brown because he believes that the Warden was aware through his grievance that Dr. Meyer was delaying treatment. The Warden responded to the grievance appeal by stating that the treatment provided was appropriate in accordance with policy.  Dkt. 99-1 at 53:16-56:25.

Mr. Hill sued Mr. Smith and Ms. Tafoya because he believed that they had the authority to direct the dentist to treat and give him immediate care and they failed to do so. Dkt. 99-1 at 59:2-16; 60:10-20; 63:10-15.

Warden Brown, Mr. Smith, and Ms. Tafoya responded to Mr. Hill's grievances after reviewing the medical records. As discussed in relation to the claim brought against Ms. Hobson, these defendants are presumptively entitled to defer to the professional judgment of medical staff. *Eagan*, 987 F.3d at 694.

Mr. Hill argues that the non-medical staff should have known that he was not being treated properly based on the allegations in his grievances. Before responding to the grievances, however, each non-medical defendant reviewed the medical records and Dr. Meyer's responses to Mr. Hill's complaints. Mr. Hill's apparent disagreement with Dr. Meyer's treatment decisions, alone, was not enough to require a non-medical official to take action. *Pyles v. Fahim,* 771 F.3d

403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.").

No reasonable jury could find that the non-medical defendants had actual knowledge or reason to believe that Dr. Meyer's medical decisions were risking substantial harm to Mr. Hill. Moreover, no reasonable jury could find that non-medical defendants had the authority to order Dr. Meyer how or when to treat Mr. Hill. These defendants are entitled to summary judgment.

### D.    Claim Against Commissioner Carter

Mr. Hill sues Commissioner Carter in his individual and official capacities for damages and injunctive relief, alleging that the Commissioner promulgated IDOC policies that violated the Eighth Amendment by preventing Dr. Meyer from performing a root canal on tooth #28. Dkt. 99-1 at 63:15-23.

An official capacity claim for damages "is effectively a claim for damages against the state and thus it is not permitted under § 1983." *Morris v. Dickman*, 791 F. App'x 607, 610 (7th Cir. 2019) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Commissioner Carter is entitled to summary judgment on Mr. Hill's official capacity claim for damages.

Mr. Hill requests that the Court order the defendants 1) to stop extracting rather than repairing teeth with root canals, and 2) to provide him with a post and crown, partial dental plate, or a durable composite tooth to replace the resin crown on tooth #8 that matches the size and color of his other front teeth.  Dkt. 64 at 21 (Amended Complaint). To survive summary judgment on his injunctive

16

relief claims, Mr. Hill must show that the IDOC policies caused violations of the Eighth Amendment. *See Howell*, 987 F.3d at 653–54.

The IDOC Dental Services Policy provides for treatment of dental emergencies, routine restoration services, extraction and other surgical services, and provision of prosthetics. Cosmetic intervention is not provided. Another IDOC policy provides that matters involving clinical judgment are reserved to clinical personnel. Neither of these policies restrict the provision of root canals, but they leave the decision as to whether a root canal is necessary to the judgment of the dentist. Mr. Hill is not permitted to demand a root canal when his dentist exercises his professional judgment and decides that extraction of the tooth is necessary. *Arnett*, 658 F.3d at 754. No evidence indicates that the extraction was not medically appropriate. In addition, there is no constitutional mandate to provide cosmetic treatment when such treatment is not required to meet a substantial risk of serious harm. Mr. Hill's challenge to the IDOC policies in support of his claim for injunctive relief fails.

## IV. Conclusion

For the reasons discussed above, Defendants' motions for summary judgment, dkts. [93], [97], and [102], are **granted**.

Mr. Hill's cross-motion for summary judgment, dkt. [102], is **denied**. Mr. Hill's motion for case status, dkt. [107], and motion for ruling, dkt. [108], are **granted** to the extent that the Court has resolved all pending motions for summary judgment.

Final judgment shall now enter in accordance with this Order and the order dated January 14, 2020, dkt. [48].

**SO ORDERED.**

Date: 9/23/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

ASHER HILL
922526
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

All electronically registered counsel